The last case, well, we have two more cases. The case before us now will be 25-4059 Garvey v. Ogden Clinic Professional Corporation. Counsel for Appellant, if you would make your appearance and proceed, please. Thank you, Your Honor. May it please the Court, Stephen H. Bergman on behalf of the Appellant, Dr. Sheila Garvey. We come to this Court on a ruling on summary judgment, and the issues in this case deal with the failure of the District Court to adhere to the standards that this Court has set when ruling on a summary judgment motion. Specifically, we have issues of improper factual findings by the District Court, along with resolving factual issues and not making all inferences in favor of the non-moving party, in this case, Dr. Garvey. The first and biggest flaw was with the District Court's conclusion that Defendant Ogden Clinic had a legitimate reason for terminating Dr. Garvey, and that being that she would be unable to meet the call requirements under her employment agreement because of the other defendant, Ogden Regional Medical Center, demanding that Dr. Garvey be removed from the trauma and surgery rotation. The problem is, at the time of the termination, Dr. Garvey had never missed a single call. It was an expected breach that Ogden Clinic was relying upon, not an actual breach. And for an anticipatory breach, there has to be a manifestation of intent to breach by the party. In this case, there was not. Dr. Garvey did not manifest any intent to breach the contract. The only manifestation of intent had been by Ogden Regional Medical Center, which was not a party to the contract. At the time that Ogden Clinic terminated Dr. Garvey, it was certainly possible that she might not be able to meet the call rotation going forward, but that was not guaranteed. It was not certain. Why was it not certain? The hospital said that they wouldn't take her, and so why would it not be certain that she couldn't do it? For a number of reasons. First, less than a week after the hospital said, we don't want her on the call rotation, the hospital then informed Dr. Garvey she had successfully completed her performance improvement plan, allowing her to maintain her privileges at the hospital, and thus that raises the prospect that the hospital would change its mind and allow her to continue to be on the trauma surgery rotation. Additionally, in the past, when a surgeon had not been able to meet a call when it was that surgeon's turn, other surgeons had covered for that surgeon, including Dr. Garvey, covering for several surgeons, younger male surgeons and a younger female surgeon, who had been on military leave and or pregnancy leave. Well, those are acts of grace. I mean, that doesn't mean anybody had to do that, and in fact, they indicated they wouldn't do it, right? That was a disputed fact. That was not a fact in the record that the other surgeons were unwilling to do that in the interim. As I said, that's not, I didn't see anything regarding that, and you can point me to it if I'm wrong, in the employment agreement about people having to fill in for somebody. No, they do not, but that had in fact been the practice for more than 20 years when Dr. Garvey overheard employment with the clinic, that had been the practice of the trauma surgeons. And you pointed out what happened a week after, the issue, why isn't the issue for purposes of a breach of contract, that moment in time when the Ogden Clinic acted? And by that, I mean, when the hospital told them they would not continue on with their agreement with Ogden Clinic if they had Dr. Garvey there, it seems, why isn't that pretty crystal clear that Ogden Clinic needed to do something? Well, Ogden Clinic may have needed to act, but terminating Dr. Garvey on the grounds of an alleged breach that had not happened yet is not the basis they could have done it on. They could have taken a number of other steps. They did not. They couldn't. They didn't, but did they have to, is the point, right, under the contract? Well, actually, they did. They couldn't terminate her for a breach that had not occurred yet. You know, as of the date of termination, she had not breached it. In fact, she was still taking trauma surgeries at the hospital and was going to continue doing so through the end of February. And as I said, there was a possibility of the hospital changing its mind. There's also the issue of Ogden Clinic could have assigned her to a different hospital and switched another surgeon to cover the clinic at Ogden Regional Medical Center. That's something they explored. And Dr. Garvey also had a private surgery practice which she had been pursuing as well that could have continued to allow her to practice that. And so, the notion that there was a breach at the time of termination is simply wrong. Weren't there a number of reasons that the hospital listed, I'm sorry, Ogden Clinic listed in their termination letter in addition to breach of a material term? I believe breach of a material term is the only issue that they're relying upon. There were no other grounds and, you know, if the clinic wanted to, they could have simply said, you know, we're exercising our right to terminate the contract on 90 days notice. They didn't. I know that's an argument that the clinic has made. The district court noted that as well. The only grounds they gave was her failure to meet the trauma surgery call. As I said, as of February 18th, she had not breached that provision. While it was certainly possible and maybe even likely it could be breached in the future, it had not been at that time. As I said, for an anticipatory breach, there has to be a manifestation of intent by the other party to the contract. Dr. Garvey had not done that. So the grounds for finding a breach simply aren't there. Manifestation of intent in the sense that I don't want to honor my call obligations? Or you know, it would be, for example, in this instance, if Dr. Garvey said I'm not going to work at Ogden Regional Medical Center anymore, that would be a manifestation of  She did not say that. Well, it wasn't up to her. The intent that was manifested was the intent of the hospital. The hospital is not a party to the contract and therefore could not manifest intent on behalf of Dr. Garvey. Only Dr. Garvey could manifest intent on behalf of herself. And so because of that, it was inappropriate for the clinic to terminate her on that basis. Additionally, that failure, because there was not a valid basis to terminate her, that also goes to the age and gender discrimination claims, because the sole supposedly non-discriminatory basis that the clinic terminated Dr. Garvey was this alleged failure to meet the call rotation, which at that time had not happened. Well, let's assume for the moment that they were wrong on that. In other words, they, consistent with your point, that that was a breach. Why does that go towards the discrimination claims? Because the discrimination law, as I understand it, doesn't turn on whether the employer was right or wrong. It turns on whether the employer actually discriminated against the individual, right? Correct. And as even the district court noted, that Dr. Garvey had made a prima facie case of discrimination based on both her age and her gender, and that the reason that she found in favor of Ogden Clinic was because they had demonstrated a non-discriminatory reason for her termination, i.e., this alleged failure to meet the call schedule that had not yet  Well, even if that failure to meet the call schedule was misguided, the question is whether it's a facially legitimate reason to terminate somebody, and in the contract, that's what it says, right? It does say in the contract, but because they were exercising the contract inappropriately, that cannot be their non-discriminatory reason for terminating. What other evidence of pretext is there, then? Well, as the record would demonstrate, there had been a change in the management at both Ogden Clinic and the hospital, and the new managers of both facilities did not like Dr. Garvey. And so the fact is, she was a woman over the age of 50 at the time of her termination. She was obviously, I keep saying she was female, so that's another grounds for gender discrimination. Not liking her is not discrimination. So what is the evidence of actual pretext that the reason was because of her age or her sex? Well, because the only reason they gave was her alleged inability to meet calls, which in the past, when younger male or younger female surgeons couldn't meet their calls, they allowed other surgeons to cover for them. Sure, but those were both, the two examples that at least were given were both temporary. This was a permanent situation. The hospital wasn't taking her back. This was a permanent decision by the hospital. She will not be part of our call rotation. And that's not a comparator, as the district court said, in terms of discrimination. Except that, as we pointed out in our papers, she could have been transferred to a different hospital for the trauma surgery and had another surgeon take over the calls at Ogden Regional Medical Center. Well, that doesn't make it, again, that's not evidence of pretext. Speculating about what could have happened with her doesn't make it pretextual. Right, but because the only reason they gave was invalid, that is at least evidence that it's a pretextual reason. Why was it invalid? Because she had not yet, in fact, breached her employment agreement. That was the only reason that Ogden Clinic gave for that. And so, that does support grounds that it was a pretextual reason. And what's your best case for that? That's not my understanding of the law. I mean, the fact that somebody gives a reason that is invalid, in other words, it's not, it turns out not to be correct. The law is that an employer can be right or wrong or otherwise, but the point is, did they discriminate? And so, the fact that an employer thinks you're a bad employee, for example, you know, that this employee is not up to snuff, well, if the objective factors indicate that you had a plausible argument, you are up to snuff, that doesn't mean that they discriminated against you. And that's not evidence of pretext standing alone, is it? And if you think that is, please give me your best case to tell me it is. So, the fact that they terminated her is not, obviously, evidence of pretext, but the fact that she, as the district court noted, she was over 50, she's female, and that was equal  So, every employee who's over 50 and female who gets fired can claim that they've been discriminated against? They've at least met the thresholds for making that argument. There has to be other reasons, and here, it was that when other surgeons were in comparable situations where they could not meet a call that were younger or male, they were afforded opportunities to have people cover for them. She was not afforded that opportunity. So it's the inconsistent application of their policies that is grounds for discrimination. I would like to turn quickly to Going back to your issue, you said that this would essentially have been an anticipatory breach, but as I recall, the district court specifically found that within the contract's requirement that she meet the call requirements or the call performance standards, I'm sorry, meet the performance standards and the call schedule requirements, that that implied or inferred the ability to meet those requirements. And when the hospital terminated her, she no longer had the ability to perform under the contract. So that's not an anticipatory breach if the contract requires that she have the ability to meet the requirements, which she no longer had. Right. I believe that the proper interpretation of the contract is that as her turns on the rotation come up, she meets them, and she had done that every single time for the previous 20 You have to address the district court's conclusion, which is that requires her to have the ability to meet as well.  And to not have the ability is a breach of the contract. Well, except that as of the date of termination, she still did have the ability to meet her calls. No, she didn't, because the hospital had said, no, you're not going to be here anymore. Whether she wants to be or not, the hospital has said, you can't be here, which they can do. And she said, I mean, what she wants is not really relevant at that point. To that point, Your Honor, as of the date of termination, she actually still had the ability to meet the calls through the end of February, number one. Number two, the hospital actually didn't have the right to demand she be removed through rotation. That was the province of the clinic itself. The hospital did not have any rights under the contract with the clinic to do that. I did want to reserve one minute, so I'm going to stop right here. So unless there's any other questions. No, please. Thank you. May it please the Court, Scott Hagan representing Ogden Clinic. Counsel and I have agreed that we'll split the time evenly, so I'll step down after about seven minutes. I want to first address the point that Your Honor raised about the language of the contract and the district court's decision. The problem here, the fundamental problem at the beginning of this contract, this breach of contract claim, is the assumption that the contract required her just to show up, just to be available for call, and it didn't have anything to do with the actual scheduling of her for call. And Your Honor is exactly right. The contract language that the district court relied on just contradicts that interpretation of the contract. The contract language says, employee shall meet the performance standards and clinic and call schedule requirements of his or her specialties as set forth by employer. So her duty was to be able to be scheduled, and she didn't do that. She couldn't do that. And as was discussed earlier, the hospital made its wishes very clear. Ogden Clinic was simply responding to that. She, Dr. Garvey, was in breach of contract because she could not be, she could not fulfill the call scheduling requirements of the contract. And there's never been any attempt by Dr. Garvey to explain how her interpretation of the contract is the correct one. Now turning to breach of the implied covenant of good faith and fair dealing, my understanding of plaintiff's claim on that is that she is claiming that Ogden Clinic had a duty to sort of advocate for her, to take her side in this issue with Ogden Regional Medical Center and also to consider other alternatives before terminating her employment. The problem is that flies in the face of Utah law and the language of the contract again. Utah law says that in terms of what's specifically required by a party through the covenant of good faith and fair dealing, you start with the language of the contract and then look at the course of dealing between the parties. In this case, there was no evidence or argument presented to the district court explaining how a course of dealing affected that analysis and implied a duty in Ogden Clinic to advocate on Dr. Garvey's behalf. And if you look at the language of the contract, the contract basically, it's an employment contract. Ogden Clinic's duty is to pay Dr. Garvey. Dr. Garvey's duty is to provide medical care and also importantly, if you look at section 3.2 of the contract, that's page 54 of the record, it's headed employee qualifications. It says, as a material condition precedent to employee's employment by employer, employee represents and warrants that he is or will be prior to the effective date of this agreement licensed to practice medicine within the state of Utah, has or will obtain prior to commencement of the employment contemplated herein staff membership and the privileges necessary to practice medicine at the facilities. The point is, your honors, that the contract allocates the responsibility for maintaining privileges. Well, she didn't lose her privileges. She didn't lose her privileges, but the language of the contract, your honor, the structure of the contract places all the responsibility for eligibility type issues on Dr. Garvey. It's her job. It certainly doesn't imply a duty on Ogden Clinic to advocate on her behalf either for licensure or credentialing or participation with insurance panels. That was her job. This is similar to that. It's a similar kind of situation where she was no longer eligible to take call at the hospital and therefore it was her job, not Ogden Clinic's, under the contract to take care of that problem. She did not do so. Again, she was in breach of contract and the covenant of good faith and fair dealing did not require Ogden Clinic to do anything about that. Finally, under Utah law, in the case of Backbone Worldwide versus Life Vantage, and that's a case that's cited on page 20 of our brief, the Utah Court of Appeals says, as long as a party, as the party has an express and objectively determined right to terminate, that party may exercise that right and its motives for doing so are irrelevant despite the existence of the implied covenant. In other words, it had the contractual right to terminate her employment. It did not have to consider other alternatives, as she argues, particularly in the light of absence of contractual provisions that would imply that kind of right and the absence of a course of dealing, no evidence of a course of dealing that would suggest the clinic had that obligation. Could I ask you to turn to the discrimination claims? Yes. I don't believe this is raised, but I'm wondering about the facts that are in the record that would indicate that one of the reasons that she was terminated by the clinic is that part of her was, of course, the lost call, but there's also evidence in the record that part of the decision-making process was she's not an easy physician to get along with. She's frustrating. She frustrates. She's blunt. She's not tactful in any way. Circumstance. And then there was, I'm not sure who's testifying here, but do we do something different here? And the answer was no. So wasn't performance and her subjective aspects of her performance also at issue with respect to her termination? The termination letter included reference to those issues that you just mentioned. Mr. Porter, Kevin Porter, the CEO who made the decision when he was deposed, he said the determining basis was the loss of the ability to take call. But part of the decision-making process, which they apparently told her about in the letter, was you've got some issues performance-wise. Yes. So that, I mean, why isn't that, and again, I don't believe this was argued, but why isn't that relevant, first of all, to whether they were obligated to investigate under the contract? And secondly, why isn't it, you know, not listing all of the reasons, essentially, or not identifying all of the reasons, and especially not identifying a subjective reason versus an objective one, why isn't that evidence of pretext? Well, first of all, those reasons were specifically stated. So they were not hidden at the time of termination. They're just being ignored now when you talk about what the reason for her termination was, and I don't see how you can ignore those. Well, Mr. Porter testified in his deposition that the but for reason, she would not have been terminated. Despite those other issues, she would not have been terminated but for the loss of the ability to participate in call. And I'll just say that Ogden Clinic didn't go down that road, really, and it simply had this issue where she was no longer eligible to take call, and so they terminated her for that principal reason. And if you look at page 32 of Dr. Garvey's principal brief, she essentially takes the litigation position that it was the loss of the ability to take call that was the but that's not discrimination. Thank you, Your Honor. I'll turn it over. Good morning, Your Honor. This is Corey Talbot on behalf of Columbia Ogden Regional Medical Center. The hospital removed Dr. Garvey from its trauma surgery call rotation because her conduct was impacting patient care and because staff commented that her conduct was abrasive, rude, that they were terrified and felt like they were walking on eggshells around her. In response to that, Dr. Garvey has filed suit against the hospital, and her claims all arise out of some sort of a contractual relationship with the hospital. And the problem she has is there is no contractual relationship. She first relies on the professional services agreement between the hospital and Ogden Clinic, and her problem is it's just that. It's an agreement between those two companies. She's not a party to it. While she says the agreement is poorly drafted, even if that's the case, it's clear and it's unambiguous who the parties are to that agreement. It's the clinic, and it's the hospital. They're identified at the outset of the agreement. They sign the agreement. There's no indication that anybody else is a party to it, and by its terms, it's integrated and contains the entire agreement of the party. There's no evidence that either party to the agreement intended for Dr. Garvey to be a party to the agreement, and there's no evidence either that Dr. Garvey intended or assented to be a party to that agreement. Dr. Garvey next argues that there's an implied-in-fact contract with her and the hospital. Her argument on this point is below what she said is that it's the relationship, if the relationship and conduct between the hospital, Ogden Clinic, and Dr. Garvey do not create an actual contract, it should be deemed to create a contract implied-in-fact, and the district court rejected that. It went through the elements of an implied-in-fact contract under Utah law and found that they were not met in this case. And Dr. Garvey does not address those findings on this appeal. Instead, what she says on appeal is that it seems like the district court assumed that there was an implied-in-fact contract based on the hospital's policies and then found that there hadn't been a breach. As I said, the hospital did address the implied-in-fact contract argument and rejected it, but setting that aside, on appeal, she says that the Zasumbo case has already found that the hospital's policies created an implied-in-fact contract, and that's another case involving Ogden Regional Medical Center years ago, prior to these current policies even being in effect. That's not what the Zasumbo case found. In that case, what had happened is the plaintiff had alleged that the hospital's code of conduct created an implied-in-fact contract. Then the plaintiff went on to allege that the hospital had breached not the code itself but the implied covenant of good faith and fair dealing that arose from those policies. At summary judgment, though, the court said, hold on, you're not arguing good faith and fair dealing. What you're actually saying is they breached the actual policies themselves. That's a breach of contract claim. You have an alleged breach of contract, so your case is out. Zasumbo never found that the code of conduct created an implied-in-fact contract. It simply noted that that's what plaintiff had alleged and ultimately ruled in favor of the hospital, finding that there was no breach of the implied covenant that would have arisen out of such a contract. And so Zasumbo doesn't get plaintiff where she needs to go. I do just really quickly want to talk about a couple matters of timing. Dr. Garvey in a couple places points to what she calls the forever letter and says, look, the hospital asked me to complete this performance improvement plan. Medical staff actually did. They asked her to fulfill that plan. She did. And she says that as a result of that, there was an implied contract that she would retain privileges at the hospital, which she retained. And she says also that the forever letter created a material issue of fact because in that letter, the hospital said that there were no additional issues regarding her behavior. And there's a timing problem with that, and that is the forever letter was written by the hospital in October of 2020. Dr. Garvey completed the performance improvement plan over a month later in November. And the conduct that the hospital was concerned about and ultimately led the hospital to ask her to be removed from the call rotation occurred in December of 2020. So that's two months after this forever letter was written. Council also mentioned the letter from the medical staff regarding. Let me make sure I understood the timing on that. You said that, okay, the conduct occurred two months after the forever letter. But at what point did they determine that they were going to, well, when was the completion of the PIP? The PIP was completed November 30th, 2020, about a month after the forever letter was  Okay. And so it was completed also prior to their determination that the conduct was continuing on.  Yeah. Okay. Let me just ask you, is it your understanding that they are appealing the discrimination claims against you to the hospital? I mean, I had some ambiguity about that when I looked at the brief, and the brief, at least at the beginning in the table of contents, says that it's appealing against Ogden Hospital. Yeah, I thought that was the case, but I didn't see that in the actual substance of the brief either, Your Honor. Well, you didn't see what? That they were pursuing the discrimination claim against the hospital on appeal.  With that, thank you, Your Honor. We ask that you affirm the district court's summary judgment decision. I will try to be quick here, Your Honor. And if you'll start with that question, based upon looking at the table of contents in the brief, and I think the argument was in the substance of your discrimination claim, it does not appear to be directed at the hospital, but rather at Ogden Clinic alone. That was unfortunately a typo in the table of contents and the heading. If you look in the text of the brief itself, we do actually raise issues against Ogden Regional Medical Center, as well as Ogden Clinic, with respect to the discrimination claims. In your opening brief? In the opening brief. On page, I think, 15 or 16 of the opening brief, and again in the 30 or 31 towards the end of the brief, we do actually specifically address Ogden Regional Medical Center on the discrimination claims, as well as Ogden Clinic. As to the contractual point Your Honor Morris had raised, the contractual provision doesn't say that she can't meet the call requirements at Ogden Regional Medical Center. It just says cannot meet the call requirements. So the fact that she couldn't meet at one hospital. It mentions schedule. It mentions a schedule. A schedule, but the fact that she couldn't meet at one specific hospital doesn't mean she couldn't meet it somewhere else. And so I believe that's an over-reading of the provision to say that because she can't meet it at one hospital, she can't meet it at all hospitals. In terms, I am out of time. You can continue. Thank you, Your Honor. Go ahead. You know, the clinic raised again the right to terminate. They didn't do so, so that's not an issue. With respect to Ogden Regional Medical Center, the reasons for the January 28th letter are factual disputes. There's no undisputed issues with those, and so that would be an improper basis for summary judgment. With respect to the contractual relationship, I think Zimbo did say that the Code of Conduct could create a contract, and the Code of Conduct was incorporated into Dr. Garvey's, the policies that Dr. Garvey was operating under. And to give you a boundary, one minute, and we're done. Okay, I had just one more point I was going to make. The other conduct that they raised after her completion of the PIP is not undisputed. It's a disputed fact that the district court should not have relied upon. Accordingly, for the reasons set forth here today and in the briefs, we submit that the district court's opinion should be reversed. Thank you very much. Thank you, counsel, for your arguments. Thank you.